### WILKES et al. v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.   June 29, 1923.)

No. 3783.

**I. Jury ⬉⬅95—Attendance of jurors at different but similar trials does not disqualify.**

The fact that some of the jurors in attendance upon the session had been present in court during the trial of different but similar cases, in which the principal witnesses for the government were the same, or had sat as jurors at the trial of such cases, does not entitle defendants to a dismissal of the array, where there was no showing that the jurors had either formed or expressed opinions as to the merits of the instant case, and upon their voir dire the jurors stated they could give the defendants the benefit of the presumption of innocence.

**2. Jury ⬉⬅136(6)—Court need not apportion peremptory challenges between the several defendants.**

Under Judicial Code, § 287 (Comp. St. § 1264), providing that, where there were several defendants, the parties on each side shall be deemed a single party for the purposes of peremptory challenges, it was not the duty of the trial court to apportion the peremptory challenges between the several defendants who were represented by different counsel.

**3. Jury ⬉⬅137(1)—Permitting district attorney to challenge juror previously passed held not error.**

It was not error for the court to permit the district attorney to challenge, peremptorily, a juror, who had once been passed by both parties, after which defendant had exercised peremptory challenges, since the passing of a juror is not a final acceptance, and the fact that thereby defendants were obliged to accept a juror who had sat in a previous similar case, but who was not subject to challenge for cause, does not alter the situation.

**4. Grand jury ⬉⬅38—Presence of stenographer to report testimony before grand jury does not invalidate.**

A stenographer, who had been sworn as an assistant district attorney under Act June 30, 1906 (Comp. St. § 534), and who attended the sessions of the grand jury and, reported the testimony of the witnesses, but took no part in the conduct of the proceeding, and was not present during the deliberations of the grand jury, was not an unauthorized person whose presence in the grand jury room invalidated the indictment.

**5. Criminal law ⬉⬅372(6)—Proof of violation of liquor laws held admissible in prosecution for conspiracy to violate Reed Amendment.**

In a prosecution for conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), the general rule forbidding proof of other and distinct offenses was not violated by the testimony that some of the defendants had been handling liquors and were operating automobiles and that one of them, during the period covered by the alleged conspiracy, paid protection money to the officer whose bribery was the object of the alleged conspiracy.

**6. Criminal law ⬉⬅665(4)—Relaxation of rule excluding witnesses rests in court's discretion.**

The extent to which the rule of the trial court excluding witnesses from the courtroom should be enforced, or relaxed, rests within the sound discretion of the trial judge.

**7. Witnesses ⬉⬅37(2)—Testimony as to entries in bank books held competent.**

It was not error to permit a witness to testify as to entries made in the books of the bank of which the witness was secretary, it appearing that the records were kept under his supervision and that he made some of the entries.

⬉⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

**8. Witnesses &⇒269(2)—Cross-examination of government witness held not germane to direct examination.**

Where a witness was called by the government merely to testify in rebuttal regarding an alleged conversation between the prosecuting witness and a defendant, it was not error to exclude cross-examination as to whether he was present when the prosecuting witness threatened to assault counsel and when he met another defendant, since the attempted cross-examination was not germane to the subject-matter of the direct examination and had no tendency to discredit the witness.

**9. Criminal law &⇒1059(2)—General exception to charge insufficient to require review of expressions of judge's opinion.**

A mere general exception to the charge is insufficient to require review of the expressions therein of the judge's opinion upon the facts.

**10. Criminal law &⇒829(4)—Requested instructions as to acts which would sustain conviction held properly refused as covered.**

In a prosecution for conspiracy to violate Reed Amendment March 3, 1917, § 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), it was not error to refuse requested instructions that jointly bringing whisky into the state or causing it to be transported in interstate commerce was not sufficient to convict of the conspiracy, unless it was done in pursuance of a preconceived plan or purpose, and that a defendant could not be convicted merely because he knew of a conspiracy by other defendants, where, from the charge as given, the jury could not reasonably have failed so to understand.

**11. Conspiracy &⇒48—Requested instruction overt acts must be subsequent to formation held properly refused.**

Requested instructions that unless the overt acts were committed subsequent to the formation of the conspiracy, and not merely during its formation, defendants should be acquitted, were properly refused, since it was not necessary to convict to prove that more than one of the overt acts charged had been committed, and the doing of an act in furtherance of a conspiracy presupposes that it was done after the conspiracy was formed.

**12. Conspiracy &⇒48—Requested instruction occurrences after overt acts could not be considered in determining conspiracy held properly refused.**

A requested instruction that occurrences after the overt acts were committed cannot be considered in determining whether or not a conspiracy was formed was properly refused.

**13. Criminal law &⇒1173(2)—Refusal of requested instruction as to legality of ground for divorce of government witness held not reversible error.**

In a prosecution for conspiracy, where it was shown that a witness for the government had been divorced from a former husband and had married another government witness, there was, at least, no reversible error in refusing instructions requested by defendants regarding the legal sufficiency of the ground for the divorce and the legal right of the two witnesses to marry.

In Error to the District Court of the United States for the Western District of Tennessee; J. W. Ross, Judge.

Loftis Wilkes and others were convicted of conspiracy to violate the Reed Amendment, and they bring error. Affirmed.

Charles M. Bryan and Scott P. Fitzhugh, both of Memphis, Tenn. (Arthur G. Brode, of Memphis, Tenn., on the brief), for plaintiffs in error.

S. E. Murray, U. S. Atty., of Memphis, Tenn. (W. H. Fisher and A. A. Hornsby, both of Memphis, Tenn., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

KNAPPEN, Circuit Judge. This writ is brought to review judgments of conviction of the several plaintiffs in error upon an indictment under section 37 of the Penal Code (Comp. St. § 10201), charging conspiracy to violate the Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a). The case belongs to the general group which includes the Tuckerman (No. 3791), Wilkes (No. 3810), Berryman (No. 3826, C. C. A.) 291 Fed. 958, Wallace (No. 3800, C. C. A.) 291 Fed. 972, and other cases of alleged bribery of Tyree Taylor, as well as the conspiracy case of Robilio and others (No. 3792, C. C. A.) 291 Fed. 975, all decided this day by this court. In this case also Taylor and his wife testified for the government. Some of the questions raised here are discussed in one or more of the other cases referred to.

In this case also complaint is made of the denial of motion to quash the indictment, upon the four grounds stated in the similar motion in the Robilio Case (No. 3792). In its essential features (apart from statement of overt acts) the indictment is very similar to the one discussed in the last-mentioned case. The discussion in that case makes it unnecessary to do more than refer thereto in sustaining the action of the District Court. The motion in arrest of judgment, based upon the same grounds, calls for no discussion.

[1] Some of the jurors in attendance upon the session had been present in court during the trial of other cases of the general group referred to, and some had sat in some of the other cases. Defendants moved to dismiss the array, and for a new array of jurors, for the reasons just stated, coupled with the proposition that the evidence being similar to the evidence in this case such jurors had passed upon the credit or lack of credit of Taylor and his wife, and had formed or expressed opinions as to the whole series of cases growing out of the indictments in question. Whether or not the practice of moving to dismiss the array was the proper one, it was not error to deny the motion. There was under it no showing of fact that the jurors had either formed or expressed opinions as to the merits of the instant case. There is no presumption of law that they did do so, nor any presumption that a juror who has heard the evidence in one of the cases, or even sat in one or more cases, will be other than impartial in another case merely because it is of the same general type. Each case involved differing conditions and questions of credibility on the part usually of different defendants, and the credibility of both Taylor and his wife was required to be weighed not only upon the facts of the individual case, but as between these witnesses and different defendants. Cf. 16 R. C. L. p. 260. Plaintiffs in error cite no authority in support of their contention, which we think plainly not well made. In fact, however, upon the subsequent examination of the jurors, upon their voir dire, each of those who had been present during the former trials testified, either directly or in effect, that he could try this case fairly and impartially, giving the defendants the presumption of innocence until proven guilty beyond a reasonable doubt. The competency of the individual jurors was addressed to the sound discretion of the trial court. Hopt v. Utah, 120 U. S. 430, 432, 7 Sup. Ct. 614, 30 L. Ed. 708; Texas & Pacific Ry. v. Hill, 237 U. S. at page

214, 35 Sup. Ct. 575, 59 L. Ed. 918; Detroit, M., etc., Ry. Co. v. Kimball (C. C. A. 6) 211 Fed. at page 633, 128 C. C. A. 565; Badders v. Burnham (C. C. A. 8) 228 Fed. at page 472, 143 C. C. A. 52. No abuse of discretion is shown.

[2] Section 287 of the Judicial Code (Comp. St. § 1264) provides that on the trial of any noncapital felony, the defendant "shall be entitled to ten * * * peremptory challenges * * * and in all cases where there are several defendants or several plaintiffs, the parties on each side shall be deemed a single party for the purposes of all challenges under this section." The several defendants were represented by different counsel. Complaint is made that the court refused to apportion the challenges between the defendants. In this there was no error. Stilson v. United States, 250 U. S. 583, 585, 586, 40 Sup. Ct. 28, 63 L. Ed. 1154; Schaefer v. United States, 251 U. S. 466, 469, 40 Sup. Ct. 259, 64 L. Ed. 360.

[3] Nor was there any error in permitting the district attorney to challenge peremptorily a juror who had once been passed by both parties, after which defendant had exercised peremptory challenges. It is the general, if not the universal, rule that either party has a right to exercise a peremptory challenge after the complexion of the jury has changed, and up to the time the jury is finally accepted and sworn. The passing of a juror previous to such time is not final acceptance of the juror. The fact that thereby defendants, who had exhausted their peremptory challenges, were obliged to accept a juror who had sat in a previous case, but who was not subject to challenge for cause, does not alter the situation.

During the direct examination of a witness for the government, the district attorney confronted the witness with statements made by him before the grand jury. It thereupon appearing that the testimony of the witness was taken by a stenographer, defendants not only objected to using anything that happened before the grand jury, but moved that the defendants be discharged because the stenographer had no right to be present. The motion was overruled, as was also a motion in arrest of judgment for the same reason. It appeared in connection with the hearing of the motion in open court, through the unchallenged statement of the district attorney, that the stenographer in question "was sworn as a special assistant United States attorney for the purpose of taking down the testimony." It is the unchallenged statement of defendants by brief that the stenographer was not a member of the regular staff of the United States district attorney, and is not shown to have been a practicing lawyer, although his appointment as assistant district attorney would possibly suggest that he had been admitted to the bar. There is nothing to indicate that the stenographer took any part in the conduct of proceedings before the grand jury, nor that he was present during any of the deliberations of that body.

[4] Upon the question whether a stenographer may lawfully attend before a grand jury for the mere purpose of taking the testimony of witnesses, the authorities are not only few in number but conflicting. There is no doubt that in view of the secrecy properly surrounding the deliberations of a grand jury the presence of a wholly unauthorized

person is unlawful; and the presence of such unauthorized person has in several cases been held sufficient to set aside the indictment. The real question would seem to be whether a stenographer duly sworn as an assistant United States district attorney, who attends only for the purpose stated and does not take part in the conduct of proceedings before the grand jury, and is not present during their deliberations, is an unauthorized person within the rule stated. Defendants seem to regard the question as dependent upon the federal statute of June 30, 1906 (34 Stat. c. 3935 [Comp. St. § 534]), which authorizes an attorney or counselor specially appointed and directed by the attorney general to "conduct any kind of legal proceeding," civil or criminal, including grand jury proceedings, etc., and cites decisions of District Courts that a stenographer for a United States district attorney, duly appointed and sworn for the purpose only of taking testimony, is not within the statute, which, as applied to this case, relates only to attorneys appointed to conduct the proceedings before the grand jury. United States v. Rubin (D. C.) 218 Fed. 245; United States v. Railway Co. (D. C.) 221 Fed. 683. We find no decisions of the Supreme Court and but two decisions of Circuit Courts of Appeals upon this specific question.

In Latham v. United States, 226 Fed. 420, 141 C. C. A. 250, L. R. A. 1916D, 1118, the Circuit Court of Appeals for the Fifth Circuit held that the presence of a clerk from the district attorney's office, who was an expert stenographer and who at the district attorney's instance took stenographic notes of the testimony of witnesses examined by the grand jury, on which the indictment was found, although he took an oath before the clerk of the court to keep the proceedings secret, was a substantial violation of defendant's right and ground for quashing the indictment, although no prejudice therefrom was alleged or shown. On the other hand, in Wilson v. United States, 229 Fed. 344, 143 C. C. A. 464, the Circuit Court of Appeals for the Second Circuit held that the presence in the grand jury room of a stenographer, who merely recorded the testimony as it was given and did not attend at the deliberations of the grand jury, did not invalidate the indictment, especially where such stenographer was a regular clerk and assistant to the district attorney, appointed by the attorney general to an office with prescribed duties and of fixed tenure, and who had taken the oath required from all government officials. It is impossible to reconcile the last two opinions mentioned. The reasoning in Wilson v. United States commends itself to our judgment. We agree with the Circuit Court of Appeals for the Second Circuit that the preservation of an accurate record of the testimony submitted to the grand jury tends to advance the ends of justice, and that the knowledge that there is being taken a record of such sort that in future prosecutions for perjury it will probably be taken by a trial jury as a correct one would have a wholesome check on witnesses who are testifying before a grand jury. We content ourselves with this brief reference to the more extended discussion contained in the opinion. The rule stated has for many years prevailed in the Second Circuit. Among the decisions which have applied that rule is United States v. Rockerfeller,

221 Fed. 462, 466, the opinion in which was written by Judge Sessions of this circuit, then sitting by designation in the Southern District of New York. We think the rule prevailing in the Second Circuit should be applied to the instant case, thereby sustaining the refusal of the court below to dismiss the jury and to arrest judgment. Whether or not the appointment of the stenographer as an assistant to the district attorney was necessary, it may have tended to emphasize his official character, and may well have been thought to give added assurance that the proprieties of the situation would be observed by him. It is not clear that defendants criticize the use made of the stenographer's transcript, except upon the ground that his presence was unauthorized. From our conclusion to the contrary, it follows that the use made of the transcript was not erroneous.

[5] As was held in the case of Robilio and Others v. United States (No. 3792, C. C. A.) 291 Fed. 975, we see no merit in the contention that the general rule forbidding proof of other and distinct offenses was violated by the testimony that two of the defendants had been handling liquors, that certain of the defendants owned and were operating automobiles, and that one of the plaintiffs in error paid Taylor protection money during the period covered by the alleged conspiracy. The testimony was, we think, relevant to the question of the formation and existence of the conspiracy.

[6] Complaint is made of discrimination in favor of the government in respect to the enforcement of the rule of the district court for the exclusion of witnesses from the courtroom. As said in the opinion in No. 3792, supra, the extent to which the rule should be enforced or relaxed was within the sound discretion of the trial judge, and we find no evidence that it has been abused; taking into account, in the case of Mrs. Taylor, the entire testimony as to the limited extent of her communication with her husband, and that the necessity of the testimony of the guard who had Taylor in custody would not seem to have been anticipated until the proof of an occurrence which developed during the trial.

What is said in the opinion in No. 3792, supra, applies to the competency of the evidence in the instant case of the Caruthersville telephone calls. In our opinion there was no prejudicial error in refusing defendant's request to charge with reference thereto.

The criticism of the charge and refusal to charge regarding presumption of innocence is sufficiently covered by what is said in the opinion in No. 3792, supra.

[7] We see no merit in the objection that the witness McCloskey was permitted to testify on behalf of the government as to the entries made in the books of the bank of which he was secretary, it appearing that the record was kept under his supervision, the secretary making some of the entries. The principle is the same as that applied in No. 3792, supra, in sustaining the competency of the Caruthersville telephone exchange manager to testify in identification of the telephone records.

[8] There was no error in excluding the questions asked on cross-examination of the witness Douglas, whether he was in attendance

291 F.—63

"when Taylor threatened to assault one of the counsel," and when Taylor "met Mr. Robert Berryman across the street." The witness was called merely to testify in rebuttal regarding an alleged conversation between Taylor and defendant Wilkes. The attempted cross-examination was not germane to the subject-matter of the direct examination, nor had it any pertinent tendency to discredit the witness Douglas.

With reference to the government's introduction of proof of Taylor's reputation for truth and veracity, the record as to objection, or lack thereof, is substantially the same as that in the Robilio Case (No. 3792); and the reasons there stated in sustaining the action of the court apply equally to the instant case.

[9] The expressions by the trial judge in his charge of his opinion of the credibility of Taylor and his wife are somewhat more argumentative than those employed in the charge in the Robilio Case, supra, unless in that respect the charge now before us is of the same general character as respects expression of opinion of credibility of the witnesses in question as that in the Robilio Case. We think we are not called upon to determine whether the charge should be classified with that in the Robilio Case or with that in the Wallace Case (No. 3800, C. C. A. 291 Fed. 972. We are not cited to, nor have we found, any record of exception to the features of the charge we are considering. There was merely a general exception to the charge. That in the absence of exception we are not bound to consider a criticism of the charge appears by the authorities cited in the Robilio Case, supra. As to the unavailability of a general exception "to the charge," see Anthony v. L. & N. Ry. Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301; N. & W. Ry. Co. v. Earnest, 229 U. S. 122, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Yazoo & M. V. R. R. Co. v. Wright, 207 Fed. at page 287, 125 C. C. A. 25; Pennsylvania Co. v. Whitney (C. C. A. 6) 169 Fed. 572, 577, 95 C. C. A. 70; Wagman v. United States (C. C. A. 6) 269 Fed. at page 572. This lack of exception would seem the more significant from the fact that counsel, following the charge, called the court's attention to what counsel thought was "possibly an inadvertence" regarding the jury's belief of the testimony of Tyree Taylor and his wife, apparently as related to the sufficiency for conviction on her testimony alone. We think the instant case is not such as to call for the overlooking of special exception.

[10-13] In our opinion it was not error to refuse requested instructions Nos. 9 and 10, to the effect that jointly bringing whisky into Tennessee, or purchasing or causing intoxicating liquor to be transported in interstate commerce, was not enough to convict of conspiracy to violate the Reed Amendment unless what was done in pursuance of a preconceived plan for that purpose; nor in refusing requested instruction No. 15, to the effect that a defendant could not be convicted merely because he knew of a conspiracy by other defendants, unless he actually participated therein. From the charge as given the jury could not reasonably have failed so to understand. Requested instruction No. 11 was, we think, also properly refused, for the reason (if for no other) that it concluded with a peremptory instruction to acquit de-

fendants. We think the court also rightly refused requested instruction No. 16, that statements made by an alleged conspirator after a conspiracy had ended were admissible only against the one making them. We are cited to no situation calling for instruction of this nature, in addition to what had, already been said by the court. The court was also justified in refusing requested instructions No. 17 and 18, to the final effect that unless the overt acts charged in the indictment were committed subsequent to the formation of the conspiracy, and not merely during its formation, the defendants should be acquitted. It was not necessary to conviction to prove that more than one of the overt acts charged in the indictment had been committed; and the doing of an act in furtherance of a conspiracy presupposes that it was done afterwards. We think it was proper to refuse also requested instruction No. 19, that occurrences after the overt acts were committed cannot be considered in determining whether or not a conspiracy was formed. There was at least no reversible error in refusing the instructions asked by defendants regarding the legal sufficiency of the ground stated by Mrs. Taylor as that on which her former husband obtained his divorce, nor the legal right of Taylor to marry Mrs. Harris, if the former's wife had divorced him for a certain suggested cause. As we understand the record, the court correctly charged that there was no evidence as to the ground on which that divorce was obtained. We think the court gave defendants all reasonable latitude of inquiry upon the subject of marital relations.

The evidence for the government, if believed, justified conviction of each of the plaintiffs in error, and we are not impressed that they have been denied a fair trial.

The judgment of the District Court is accordingly affirmed.